**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MICHAEL H. JOHNSON,

                                            CASE NO. 04-71536

    Plaintiff,                         HON. LAWRENCE P. ZATKOFF

v.

BLACK & DECKER (U.S.), Inc.,

    Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on JULY 20, 2005

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendant Black & Decker's Motion for Summary Judgment. Plaintiff Michael Johnson has responded and Defendant has replied to the response. In addition, Plaintiff has responded to Defendant's reply brief. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED, in part, and DENIED, in part.

## II. BACKGROUND

**A. The Accident**

On September 17, 2002, Plaintiff Michael Johnson (hereinafter, "Plaintiff") sustained an injury to his left hand when his hand came in contact with the rotating bit on his router.[1] The router was manufactured by Defendant Black & Decker (hereinafter, "Defendant").

At the time of the accident, Plaintiff was 57 years old, and was a retired prison system employee. Plaintiff had over forty years of carpentry experience and performed miscellaneous carpentry work as a supplement to his retirement income.

Plaintiff obtained the accident router on November 3, 1994. Plaintiff asserts that this was the third Black & Decker router he had owned, and that the previous two were returned with bad power switches.[2] Plaintiff had used the accident router for eight years without incident.

On the day of the accident, Plaintiff turned the router on and off on one occasion before the accident happened. Plaintiff then turned the router on again to make the final cuts on wood stock that he was using for a home project. After making the cuts, he switched the power to the router off, but the router continued to operate. Plaintiff attempted to pull the router's power cord out of the electric wall socket, but before he could, he felt the router turn in his right hand and instinctively reached for it with his left hand, causing his fingers to come in contact with the router's bit. Plaintiff sustained a cutting injury to his left index finger, and fractured a knuckle joint on his left middle finger.

---

[1] The background facts regarding Plaintiff's injury are undisputed and come from Defendant's Brief. *See* Plaintiff's Reply Brief, at 1 ("The scenario regarding Plaintiff's injury has been accurately reported by Defendant.").

[2] Plaintiff obtained the accident router in order to replace the router he had purchased on February 22, 1994.

Plaintiff asserts that the switch on the router had never failed prior to the day of his accident. Plaintiff also asserts that he had never performed maintenance or repairs to the router, and had never disassembled it. At time, Plaintiff had used an air compressor to "blow off" sawdust from the router.

**B. The Inspection of the Router**

On March 14, 2005, Engineering Consultant Gary Cloud, Ph.D., P.E. of Michigan State University conducted an inspection of the accident router.[3] Cloud tested the router and determined that the power switch was stuck in the "on" position. Cloud then disassembled the switch and further examined it. Cloud discovered that there was a considerable amount of debris inside the switch. The debris appeared to include "fine sawdust mixed with grease and/or resins or sap from wood." *See* Cloud's Report, at 4.

Cloud attempted to flip the rocker inside the switch from its "on" position to the "off" position. The rocker was firmly stuck in the "on" position, but after applying further pressure, the rocker was successfully switched to the "off" position.

Based on his findings, Cloud theorized that the switch gradually accumulated sawdust and other components over the years due to the normal use of the router. At some point, the mixture hardened and prevented the rocker inside the switch from being able to move to the "off" position. Cloud further suggested that the rocker's inability to properly move was due to its reliance on a "rather weak spring," and that the spring was not strong enough to move the rocker once the debris had hardened around it.

---

[3] The results of this inspection are included in Cloud's March 27, 2005 report, which is attached to Plaintiff's Response Brief.

Summarizing his findings, Cloud concluded that the switch was "poorly designed and/or poorly chosen for the application," "not amply protected against the invasion of sawdust, other wood products, or moisture", that there was "no fail-safe mechanical connection" to break the power circuit, and that the switch relied on a "small coil spring" that was "too weak to break the circuit" if the mechanism became stuck in the "on" position.

### III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56©).  A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted).  In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial.  *See* FED. R. CIV. P. 56(e); *Celotex*, 477

U.S. at 324. The non-moving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

### IV.  ANALYSIS

Plaintiff's Complaint asserts three counts: (1) negligence, (2) breach of express and implied warranty, and (3) strict liability in tort. By his response brief, Plaintiff admits that he has not established a *prima facie* case of Negligent Failure to Recall the Product, Breach of Express Warranty, or Strict Liability, and that these counts may be dismissed. The Court now addresses Plaintiff's various theories of negligence as well as his remaining count of breach of implied warranty.

**A. Negligence**

The parties dispute as to whether Plaintiff has established a *prima facie* case regarding three distinct theories of negligence: (1) design defect, (2) manufacturing defect, and (3) failure to warn. The Court will address each individually.

**1. Design Defect**

The Michigan Courts have adopted a risk-utility analysis in design defect cases. The Michigan Supreme Court explained this analysis in *Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 688 (1984): "The competing factors to be weighed under a risk-utility balancing test invite the trier of fact to consider the alternatives and risks faced by the manufacturer and to determine whether in light of these the manufacturer exercised reasonable care in making the design choices it made."

5

Additionally, in *Owens v. Allis-Chalmers Corp.*, 414 Mich. 413, 429 (1982), the Court explained that a plaintiff in a design defect case must show that the design was "unreasonably dangerous in light of the foreseeable risks of injury."

In the present case, Plaintiff relies heavily on the findings of his expert Gary Cloud's report in order to show that there were design alternatives. Essentially, Cloud asserted that Defendant could have inexpensively altered its design in three ways: (1) by designing the switch in order to prevent debris from entering the switch, (2) by using a stronger spring in the switch to prevent it from getting stuck, and/or (3) by using a mechanical connection that would allow the operator to break the power circuit. *See* Cloud's Report, at 4-5. Besides the evidence of design alternatives from Cloud's report, Plaintiff has presented little evidence regarding the foreseeability of the risk of injury. Nevertheless, the Court finds that whether Plaintiff will be able to satisfy his burden is a genuine issue of material fact and is a jury question.

**2. Manufacturing Defect**

An allegation of a manufacturing defect is analyzed very differently than an allegation of a design defect. "In the case of a 'manufacturing defect,' the product may be evaluated against the manufacturer's own production standards, as manifested by that manufacturer's other like products." *Prentis v. Yale Mfg. Co.*, 421 Mich. at 683. Manufacturing defects necessitate an "examination of the product itself rather than the manufacturer's conduct." *Gregory v. Cincinnati, Inc.*, 450 Mich. 1, 13 n.10 (1995). In other words, a manufacturing defect alleges that a product's defect or malfunctioning was caused by some imprecision in the manufacturing process, rather than from any negligent conduct of the manufacturer in designing the product.

Plaintiff justifies his allegation of a manufacturing defect by pointing out that the router did,

in fact, malfunction. Such evidence alone, however, is insufficient to support its claim. A claim of manufacturing defect must be supported by evidence that the allegedly defective product did not conform to the manufacturer's own product standards. Plaintiff has presented no evidence to show that the accident router was somehow defective as compared to similar routers manufactured by Defendant. Instead, Plaintiff's own inspection of the product reveals that there was no evidence of a manufacturing defect. The following exchange took place during the deposition of Plaintiff's expert Gary Cloud:

> Q: As a result of disassembly of the switch and your analysis of it, would you agree that there is no evidence that it was defectively manufactured?
> A: I have already commented that I believe the switch was poorly chosen.
> Q: No, In understand. But –
> A: And that is part of manufacturer.
> Q: . . . but is there any evidence that you have uncovered to suggest that whether the machine operator, or how the assembly was at the [switch manufacturer's] factory, did something wrong when they put together this switch housing?
> A: No.

Cloud Deposition, 53-54. The above exchange clearly indicates that Cloud has no complaint regarding the *manufacture* of the switch, only that he believes the switch should have been *designed* differently. Quite simply, the Court will not allow Plaintiff to convert it's claim of design defect into a claim of manufacturing defect.

For these reasons, the Court finds that Plaintiff has failed to establish a *prima facie* case of manufacturing defect.

### 3. Failure to Warn

"[I]t is settled law that a manufacturer is liable in negligence for failure to warn the purchasers or users of its product about dangers associated with intended use." *Antcliff v. State Employees Credit Union*, 414 Mich. 624, 637-38 (1982). Defendant argues that the danger of

coming in contact with the router's bit was an obvious danger, and that it owed no duty to warn. *See Glittenberg v. Doughboy Recreational Ind., Inc.*, 441 Mich. 379, 391 (1992) (stating that there is no duty to warn against open and obvious dangers).

Plaintiff correctly responds that it was not seeking a warning regarding the obvious danger of coming in contact with the router's bit, but regarding the danger associated with the defective switch. *See* Plaintiff's Response Brief, at 5-6. Plaintiff's claim for negligent failure to warn must nevertheless fail, however, because Plaintiff has not shown that the risk of injury was either foreseeable or unreasonable. *See* Section A.1., *supra*. Furthermore, in his deposition, Plaintiff's own expert presented no opinion regarding whether there was a failure to warn:

> Q: You don't have any opinions that there was a failure to warn about the use of this product, do you?
> A: No.

Cloud's Deposition, at 78.

Absent any evidence regarding the foreseeability of the risk that the power switch would be defective, the Court can only conclude that Defendant was unaware that the switch might fail. Defendant cannot be held liable for the failure to warn of an unknown and unforeseeable risk.

For these reasons, the Court finds that Plaintiff has failed to establish a *prima facie* case of negligent failure to warn.

**B. Breach of Implied Warranty**

Plaintiff's last claim is that the Defendant breached the router's implied warranty. In *Prentis v. Yale Mfg. Co.*, the Michigan Supreme Court explained that "whether a suit is based upon negligence or implied warranty, we require the plaintiff to prove that the product" is "defective." *Prentis v. Yale Mfg. Co.,* 421 Mich. at 682. The term "defective" is a term of art in products liability

cases. *Id.* A product is "defective" if it has either a manufacturing defect or a design defect. *Id*.

The Court has already rejected Plaintiff's claim that there was a manufacturing defect. Nevertheless, because there is a question of material fact regarding whether there was a design defect, the Court cannot conclusively determine that the router was not defective. If Plaintiff is unable to prove its claim of design defect at trial, however, Plaintiff's breach of implied warranty claim must also fail. Accordingly, the Court finds that whether the router was defective is a genuine issue of material fact to be decided by the jury.

## V. CONCLUSION

For the above reasons, the Court HEREBY GRANTS, in part, Defendant's Motion for Summary Judgment. The Court HEREBY DISMISSES Plaintiff's claims of manufacturing defect, failure to warn, negligent failure to recall the product, breach of express warranty, and strict liability. The Court HEREBY DENIES Defendant's Motion for Summary Judgment as to Plaintiff's claims of design defect and breach of implied warranty.

IT IS SO ORDERED.

                                                    s/Lawrence P. Zatkoff
Date: July 20, 2005                    LAWRENCE P. ZATKOFF
                                                    UNITED STATES DISTRICT JUDGE

S:\Marie ECF\04-71536.johnson.back&decker.update.wpd