**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MICHAEL H. JOHNSON,

                                                   CASE NO. 04-71536
    Plaintiff,                          HON. LAWRENCE P. ZATKOFF

v.

BLACK & DECKER (U.S.), Inc.,

    Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse, in the City of Port Huron, State of Michigan, on November 29, 2005

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendant Black & Decker's Motion *In Limine* to Strike the Testimony of Gary Cloud and to Exclude Evidence. Plaintiff Michael Johnson has responded and Defendant has replied to the response. In addition, Plaintiff has responded to the Court's Order to Show Cause as to Why Plaintiff Did Not File a Timely Response. After reviewing Plaintiff's response, the Court finds that Plaintiff's failure to file a timely response was inexcusable. Nevertheless, in this instance, the Court declines to impose sanctions and HEREBY WITHDRAWS its October 28, 2005 Order to Show Cause.

The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore,

pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendant's Motion to Strike the Testimony of Gary Cloud and to Exclude Evidence is DENIED.

## II. BACKGROUND

**A. The Accident**

On September 17, 2002, Plaintiff Michael Johnson (hereinafter, "Plaintiff") sustained an injury to his left hand when his hand came in contact with the rotating bit on his router.[1] The router was manufactured by Defendant Black & Decker (hereinafter, "Defendant").

At the time of the accident, Plaintiff was 57 years old, and was a retired prison system employee. Plaintiff had over forty years of carpentry experience and performed miscellaneous carpentry work as a supplement to his retirement income.

Plaintiff obtained the accident router on November 3, 1994. Plaintiff asserts that this was the third Black & Decker router he had owned, and that the previous two were returned with bad power switches.[2] Plaintiff had used the accident router for eight years without incident.

On the day of the accident, Plaintiff turned the router on and off on one occasion before the accident happened. Plaintiff then turned the router on again to make the final cuts on wood stock that he was using for a home project. After making the cuts, he switched the power to the router off, but the router continued to operate. Plaintiff attempted to pull the router's power cord

---

[1] The background facts regarding Plaintiff's injury are undisputed and come from Defendant's Brief in Support of its April 4, 2005 Motion for Summary Judgment.

[2] Plaintiff obtained the accident router in order to replace the router he had purchased on February 22, 1994.

out of the electric wall socket, but before he could, he felt the router turn in his right hand and instinctively reached for it with his left hand, causing his fingers to come in contact with the router's bit. Plaintiff sustained a cutting injury to his left index finger, and fractured a knuckle joint on his left middle finger.

Plaintiff asserts that the switch on the router had never failed prior to the day of his accident. Plaintiff also asserts that he had never performed maintenance or repairs to the router, and had never disassembled it. On one occasion, Plaintiff had used an air compressor to "blow off" sawdust from the router.

**B. The Inspection of the Router**

On March 14, 2005, Engineering Consultant Gary Cloud, Ph.D., P.E., of Michigan State University conducted an inspection of the accident router.[3] Cloud tested the router and determined that the power switch was stuck in the "on" position. Cloud then disassembled the switch and further examined it. Cloud discovered that there was a considerable amount of debris inside the switch. The debris appeared to include "fine sawdust mixed with grease and/or resins or sap from wood." *See* Cloud's Report, at 4.

Cloud attempted to flip the rocker inside the switch from its "on" position to the "off" position. The rocker was firmly stuck in the "on" position, but after applying further pressure, the rocker was successfully switched to the "off" position.

Based on his findings, Cloud theorized that the switch gradually accumulated sawdust and other components over the years due to the normal use of the router. At some point, the

---

[3] The results of this inspection are included in Cloud's March 27, 2005 report, which is attached as Exhibit C of Plaintiff's Response Brief.

mixture hardened and prevented the rocker inside the switch from being able to move to the "off" position.  Cloud further suggested that the rocker's inability to properly move was due to its reliance on a "rather weak spring," and that the spring was not strong enough to move the rocker once the debris had hardened around it.

Summarizing his findings, Cloud concluded that the switch was "poorly designed and/or poorly chosen for the application," "not amply protected against the invasion of sawdust, other wood products, or moisture", that there was "no fail-safe mechanical connection" to break the power circuit, and that the switch relied on a "small coil spring" that was "too weak to break the circuit" if the mechanism became stuck in the "on" position.

### III. LEGAL STANDARD

Federal Rule of Evidence 702 provides the standard for the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This rule incorporates the standard set forth by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  "Although [*Daubert*] recognized that the evaluation of expert testimony is generally left to juries, the *Daubert* Court emphasized the trial judge's 'gatekeeping' role with respect to expert proof on scientific or technical issues." *Berry v. Crown Equipment Corp.*, 108 F. Supp. 2d 743 (E.D. Mich. 2000).

### III. ANALYSIS

**A. Motion to Strike Expert Testimony of Gary Cloud**

    **1. Whether Gary Cloud has sufficient expertise to qualify as an expert witness**

To qualify as an expert under Rule 702, a witness must first establish his expertise by demonstrating his "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Although this requirement has always been treated liberally, that "does not mean that a witness is an expert simply because he claims to be." *Pride v. BIC Corporation*, 218 F.3d 566, 577 (6th Cir.2000). The court is to examine "not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 303 (6th Cir.1997).

    Defendant asserts that Plaintiff's expert Gary Cloud has not satisfied this standard. Among other things, Defendant argues that Cloud has spent most of his time in a university environment, that he has never been employed by a company that designs switches for consumer products, and that he has never designed a switch himself or authored any articles on the subject. *See* Defendant's Brief, at 7. For support, Defendant directs the Court to *Berry v. Crown Equipment Corp.*, 108 F. Supp. 2d 743 (E.D. Mich. 2000).

    In *Berry*, the court determined that plaintiff's witness George Bombyk was not qualified to testify as an expert in a case involving a forklift accident. Bombyk was a self-employed "safety consultant" who "considered himself to be an expert in accident prevention and safety." *Id.* at 750. Bombyk had no college degrees in safety consulting, nor did he hold any graduate degrees in the subject. *See Id.* Bombyk had never published any articles in professional journals. *See id.* In addition, Bombyk had little prior experience with forklifts or forklift design.

In the present case, and similar to Bombyk, Gary Cloud has never designed a switch nor worked for a company that designs switches. In great contrast to Bombyk, however, Gary Cloud has an extensive resume detailing his professional qualifications. Cloud has an undergraduate and masters degree from Michigan Technological University and a Ph.D. from Michigan State University. *See* Plaintiff's Response, Ex. A, Curriculum Vitae. He has been a licensed professional engineer since 1970, and has been a professor of mechanical engineering at Michigan State University since 1986. In addition, Cloud has been published numerous times in professional journals.

Though Cloud has not worked specifically in the field of switch design, nor written specifically on the topic, the Court finds that Cloud's extensive credentials in mechanical engineering qualify him to testify as an expert in this case.

**2. Whether Gary Cloud's theories have a proper foundation and valid methodology**

"Once the proposed expert has crossed the foundational threshold of establishing his personal background qualifications as an expert, he must then provide further foundational testimony as to the validity and reliability of his theories." *Berry v. Crown Equipment Corp.*, 108 F. Supp. 2d at 749 (citation omitted). In acting as "gatekeepers," the *Daubert* Court has instructed the courts that they are not to be concerned with the reliability of the conclusions generated by valid methods, principles and reasoning" but are "only to determine whether the principles and methodology underlying the testimony itself are valid." *U.S. v. Bonds*, 12 F.3d 540, 556 (6th Cir. 1993). In evaluating the scientific validity of expert testimony, *Daubert* identified several factors for the district court to consider, notably: "the testability of the expert's hypotheses (whether they can be or have been tested), whether the expert's methodology has been subjected to peer review, the rate of error

6

associated with the methodology, and whether the methodology is generally accepted within the scientific community." *Berry v. Crown Equipment Corp.*, 108 F. Supp. 2d at 749 (citing *Daubert*, 509 U.S. at 593-94).

In the present case, Plaintiff's expert Gary Cloud analyzed and disassembled the Plaintiff's router. *See* Plaintiff's Response Brief, Ex. C, 1-3. Cloud analyzed the electrical resistance of the switch using a multimeter and then disassembled the router. Cloud then determined that the switch was not working properly and that it was stuck in the "on" position. After using pressure to loosen the switch, Cloud was able to move the switch to the "off" position. Cloud once again used the multimeter to measure the electrical resistance through the router. With the switch "on," the resistance measured zero ohms. With the switch "off," the resistance measured near infinity, indicating an open circuit. These results indicated to Cloud that the switch was now working properly. *See id*. Based on his examination, Cloud concluded that the switch was poorly designed to protect the switch from the effects of moisture and sawdust, and that a stronger spring in the switch mechanism would have prevented the malfunction. *See id*.

In its role as "gatekeeper," the Court is not concerned with an expert's conclusions, but only with his methodology. *See U.S. v. Bonds*, *supra*. In the present case, Gary Cloud used his expertise as a professional engineer to analyze and disassemble the Plaintiff's router. The Court finds that Cloud was certainly competent to do this, and that his methods were sound. In fact, Cloud's initial conclusion that the switch was stuck in the "on" position appears to the Court to be entirely *un-controversial*. In addition, Defendant has not challenged any of Cloud's methods in reaching this conclusion. Defendant's objection to Cloud's testimony is more likely rooted in Cloud's overall opinion that the switch was "poorly designed." Defendant is correct that this conclusion has not

been subjected to peer review, nor has Cloud explained how the switch might have been designed better. Nevertheless, and after considering the *Daubert* factors, the Court finds that Cloud is a competent expert in this subject area and should be entitled to offer his expert opinions at trial. Defendant will of course have ample opportunity at trial to cross-examine Cloud as to his opinions and conclusions.

**B. Motion to Exclude Evidence**

The Federal Rules of Evidence govern the admissibility of evidence at trial. Federal Rule of Evidence 401 provides: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 establishes that not all relevant evidence is admissible, and that "[e]vidence which is not relevant is not admissible." Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Defendant's Motion to Exclude Evidence asserts that Plaintiff's prior experiences of switch failure with Defendant's routers should be excluded. *See* Defendant's Brief, at 10-13. Defendant asserts that when Plaintiff allegedly returned two similar routers, that the routers were never disassembled by Black & Decker or DeWalt, and that Plaintiff cannot lay a foundation for those router's failures. Defendant argues that any testimony on these prior incidents is irrelevant under FED. R. EVID. 401 and is inadmissible under FED. R. EVID. 402 and 403.

Plaintiff counters that his prior experiences of switch failure with similar routers is both relevant and not prejudicial, and that Plaintiff can testify that he purchased two similar routers and

...

that he experienced similar switch failure with each of those routers. *See* Plaintiff's Response Brief, at 6. Plaintiff admits that the prior switch problems are not admissible to prove the defect in the present case.

The Court agrees with Plaintiff's position and finds that Plaintiff's prior experiences of switch failure are relevant and are admissible pursuant to the above-stated Federal Rules of Evidence.

## IV.  CONCLUSION

For the above reasons, the Court HEREBY DENIES Defendant's Motion *In Limine* to Strike the Testimony of Gary Cloud and to Exclude Evidence.

IT IS SO ORDERED.

                            s/Lawrence P. Zatkoff
                            LAWRENCE P. ZATKOFF
                            UNITED STATES DISTRICT JUDGE

Dated:  November 29, 2005

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on November 29, 2005.

                            s/Marie E. Verlinde
                            Case Manager
                            (810) 984-3290